# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 07-cv-02062-REB-CBS

KANDACE WILLIAMS,

     Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York insurance company,
AT&T LONG TERM DISABILITY PLAN FOR OCCUPATIONAL EMPLOYEES, an
ERISA welfare benefit plan, and
AT&T INTEGRATED DISABILITY SERVICE CENTER,

     Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, & RESOLVING RELATED MOTIONS

---

**Blackburn, J.**

     This matter is before me on the following motions: (1) the **AT&T Defendants'**

**Motion for Summary Judgment on First and Second Claims** [#66[1] (sealed version)],

[#67 (redacted version)], and [#68 (public entry for [#66)]] filed November 30, 2009; (2)

the **Plaintiff's Combined Cross-Motion and Brief in Support for Summary**

**Judgment To Reverse Defendants' Decision To Terminate her Long-Term**

**Disability Benefits** [#72 (sealed version)], [#73 (redacted version)], and [#75 (public

entry for [#72])] filed December 11, 2009; (3) the **Plaintiff's Motion for Assessment of**

**Penalties Against Defendant Metlife under 29 U.S.C. § 1132(c)** [#77] filed December

---

[1] "[#66]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

21, 2009; (4) **MetLife's Combined Motion and Brief for Summary Judgment** [#83] filed January 8, 2010; and (5) the **Plaintiff's Motion In Limine To Exclude Defamatory and Irrelevant Reference to Board Certification of Plaintiff's Treating Physician** [#102] filed February 8, 2010.  The parties filed responses [#66, #76, #88, #101, #104] and replies [#99, #100, #109] addressing two of the motions for summary judgment.  Defendant Metropolitan Life Insurance Company filed a response [#84] to the motion for assessment of penalties, and the plaintiff filed a reply [#92] in support of her motion.  Defendant AT&T Long Term Disability Plan for Occupational Employees filed a response[#108] to the motion in limine, and the plaintiff filed a reply [#110].  I grant the defendants' motions for summary judgment, and I deny the plaintiff's motion for summary judgment.[2]  I deny the plaintiff's motion for assessment of penalties and the plaintiff's motion in limine.

## I.  JURISDICTION

My jurisdiction arises under 18 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) and (f) (ERISA).

## II.  FACTS

This lawsuit arises out of Defendant Metropolitan Life Insurance Company of America's ("MetLife") termination of the plaintiff's disability benefits under a long-term disability ("LTD") plan provided by the plaintiff's prior employer, AT&T, Corp., under the AT&T Long Term Disability Plan for Occupational Employees (Plan).  The plaintiff, Kandace Williams, has been unable to return to her prior occupation since September

---

[2] The issues raised by and inherent to the cross motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

13, 2001. After leaving work, Ms. Williams made a claim for disability benefits under the Plan. MetLife, the Plan's claims administrator, certified Ms. Williams' LTD benefit for approximately three years and six months, from December 14, 2001, through May 31, 2005. MetLife terminated her disability benefits on May 20, 2005, stating that the medical information did not show a severity of disability that would preclude Ms. Williams from doing any other job for which she is qualified. Ms. Williams filed a timely appeal, and on August 1, 2005, MetLife upheld its adverse benefit determination. Ms. Williams subsequently provided additional information in support of her claim. On December 22, 2005, MetLife informed Ms. Williams that the supplemental information did not alter its prior determination.

Ms. Williams' claims in this case arise under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 - 1461. Before her 2001 claim for disability benefits, Ms. Williams served as a Production Assistant with AT&T. In 2001, she sought disability benefits because she was no longer able to work due to several, chronic, medical conditions, including severe back pain resulting from a car accident in September of 2001. I describe her conditions only generally, because Ms. Williams has redacted from the public version of her motion for summary judgment the detailed description of her medical conditions. She has undergone several surgeries and her treatment has included substantial medication usage, including highly potent pain relievers. In addition to her back pain, Ms. Williams suffers from other conditions documented in the record. Ms. Williams contends that, due to the debilitating effect of these conditions, she has been unable to return to her prior occupation or any other occupation since September 13, 2001.

The AT&T Plan defines disability as follows:

You're unable to do any job for any employer for which:

• You're qualified, or

• You may become reasonably qualified by training, education or experience, other than a job that pays less than 50% of your Eligible Base Pay at the time you became disabled.

*Administrative record* [#59 (sealed version)] & [#60 (public entry for [#59])], p. 1195.[3]

The Plan is defendant AT&T Long Term Disability Plan for Occupational Employees. AT&T Corp. is the designated Plan Administrator, and defendant Metropolitan Life Insurance Company (MetLife) was at all relevant times the designated Claims Administrator for the Plan. *Rec.*, p. 1203. MetLife made the determination that Ms. Williams' disability benefits should be terminated. After Ms. Williams' benefits were terminated, defendant AT&T Integrated Disability Service Center became the Claims Administrator for the Plan.

Ms. Williams asserts three claims in her complaint. In her first claim for relief, she asserts a claim for benefits under the terms of the Plan. Under 29 U.S.C. § 1132(a)(1)(B), a plan beneficiary may assert a claim for benefits. Necessarily, this claim is asserted against defendant AT&T Long Term Disability Plan for Occupational Employees, the only source of Plan benefits. In her second claim for relief, Ms. Williams asserts a claim for breach of ERISA fiduciary duty against MetLife under 29 U.S.C. § 1104(a)(3). She contends that, as the Plan's claims administrator, MetLife breached its fiduciary duty to Ms. Williams when MetLife terminated Ms. Williams' disability benefits. In her third claim for relief, Ms. Williams asserts a claim against MetLife under 29 U.S.C. § 1132(c)(1). Ms. Williams alleges that MetLife failed timely to provide to Ms. Williams documents she requested from MetLife relevant to Ms. Williams'

_____

[3] Hereafter, I cite to the administrative record as "*Rec.*" followed by a page number.

claim for benefits under the plan.

### III. STANDARD OF REVIEW

ERISA provides a detailed and comprehensive set of federal regulations governing the provision of benefits to employees by employers. Under 29 U.S.C. § 1132(a), part of ERISA, a plan beneficiary has the right to federal court review of benefit denials and terminations. however, the statute does "not establish the standard of review for such decisions." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 824-25 (10th Cir.1996). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court established the basic framework for determining the standard of review in ERISA cases that challenge the denial or termination of benefits. "(A) denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. If the plan provides for such discretion, then the proper standard of review is abuse of discretion. *Id*. Ms. Williams concedes that the Plan at issue here gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, and that, therefore, the abuse of discretion standard of review is applicable. *Motion for summary judgment* [#72 (sealed version)], [#73 (redacted version)] pp. 8 - 9.

Under the abuse of discretion standard of review, the Plan's decision need not be the only logical decision nor even the best decision. Rather, the decision need only be sufficiently supported by facts known to the Plan to counter or rebut a claim that the decision was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098

5

(10th Cir. 1999). The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." ***Id***. (quoting ***Vega v. National Life Ins. Serv., Inc.***, 188 F.3d 287, 297 (5th Cir. 1999)).

The United States Supreme Court recently outlined several considerations that are relevant to a reviewing court's application of the arbitrary and capricious standard. ***Metropolitan Life Ins. Co. v. Glenn***, 554 U.S. 105, ___, 128 S.Ct. 2343, 2351 - 2352 (2008). These factors include: (1) whether any potential conflict of interest exists; (2) the quality and quantity of the medical evidence; (3) whether the plan or claims administrator provided greater emphasis to medical reports favoring a denial of benefits as opposed to those supporting a determination of disability; (4) whether the plan or claims administrator provided its reviewing physicians and other experts with all of the relevant evidence; (5) whether the plan or claims administrator "has taken active steps to remove bias and promote accuracy;" and (6) whether the plan or claims administrator considered any social security disability determination, including whether the administrator encouraged the claimant to apply for social security disability benefits, and then ignored a social security disability determination. ***Id***. This list of considerations is not exhaustive.

In ***Glenn***, the Court held that when an ERISA insurer holds a dual role in which it "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" that insurer has a conflict of interest. ***Metropolitan Life Ins. Co. v. Glenn***, 554 U.S. 105, ___, 128 S.Ct. 2343, 2346 (2008). Ms. Williams does not claim that such a conflict of interest exists in this case. Ms. Williams argues, however, that all of the other factors weigh in favor of her contention that the defendants' termination of her disability benefits was arbitrary and capricious.

Generally, summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this case, the administrative record [#59 (sealed version)] & [#60 (public entry for [#59])] provides all of the relevant facts, and there is no contention that the administrative record is incomplete or inaccurate. The undisputed and relevant facts are established, and the only remaining question is an evaluation of MetLife's benefits determination under the legal standard of review outlined above. After this review is completed, either the plaintiff or the defendants necessarily will be entitled to judgment as a matter of law.

## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the purpose of applying the *Glenn* factors to the determination at issue in this case, I adopt, at least in a general sense, the plaintiff's statement of these factors, as stated in her motion for summary judgment.

### A.  MetLife's reviewing physicians were biased.

Ms. Williams contends that MetLife relied almost entirely on opinions rendered by reviewing physicians hired by MetLife. These physicians reviewed Ms. Williams medical records and opined that Ms. Williams is not disabled. These doctors never examined or spoke to Ms. Williams. Ms. Williams argues that MetLife's decision to credit the opinions of the reviewing physicians, and to disregard the opinions of her treating physicians, indicates an abuse of discretion by MetLife. Some of Ms. Williams' argument on this point implicates also Ms. Williams' claim that the reviewing physicians' did not review all of the evidence and that their analysis is flawed. I will consider here Ms. Williams' claim that the reviewing physicians were biased. I will consider below Ms. Williams' contentions that the reviewing physicians did not consider all of the evidence

and used a flawed analysis.

Citing several other cases from other courts, Ms. Williams argues that two of MetLife's reviewing physicians, Dr Lumpkins and Dr. Marion, are biased. Both of these doctors are employed by Elite Physicians, a subsidiary of Network Medical Review (NMR). Citing evidence developed in other cases, Ms. Williams contends, for example, that in 2005, NMR derived over 25 percent of its revenue performing medical record reviews for MetLife. In essence, Ms. Williams claims that NMR, Dr. Lumpkins, and Dr. Marion have a financial incentive to make findings that the patients whose records they review are not disabled.

AT&T argues that the theory that reviewing physicians have an inherent bias or conflict in every case because they are hired by a claims administrator is not sufficient to alter the usual application of the arbitrary and capricious standard in an ERISA case. *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir. 2006). I agree with the *Davis* court that a showing of bias requires a plaintiff to show that the reviewing physicians had a specific incentive to derail the plaintiff's disability claim. No such incentive has been shown here. AT&T challenges the admissibility of much of the evidence cited by Ms. Williams in support of her claim of bias. I agree with AT&T that the admissibility of some of the evidence cited by Ms. Williams is, at best, questionable. However, I need not resolve this issue here because I conclude that the evidence cited by Ms. Williams is not sufficient to demonstrate that MetLife's reviewing physicians, Dr. Lumpkins and Dr. Marion, exhibited any significant bias in reviewing Ms. Williams' claim. Ms. Williams cites also claimed inconsistencies and flawed procedures in Dr. Lumpkins and Dr. Marion's reports as evidence of their bias. I analyze these contentions V.C. of this order, below. I conclude that Ms. Williams has not shown inconsistencies or flawed

procedures that show significant bias on the part of Dr. Lumpkins and Dr. Marion.  Thus, this factor does not weigh in favor of a finding that MetLife abused its discretion.

### B.  MetLife ignored its own procedures.

Ms. Williams contends that MetLife ignored one of its procedures concerning tender of a reviewing physician's report to the employee's attending treating physician. The relevant guideline refers to reviewing physicians as IPCs, meaning independent physician consultants.  The relevant guideline states

> If the IPC's report supports claim denial or termination, it should always be sent to the employee's attending physician for review and or comment prior to denying or terminating the claim.

> Additionally, the IPC report may be released under other circumstances, including the following:

> • If follow-up and comment is requested from the treating provider

> • If requested based upon ERISA regulations in the case of a claim appeal.

*Motion for summary judgment* [#72], Exhibit 11, p. 13.

Ms. Williams contends that MetLife failed to follow this procedure with the reports of reviewing physicians Dr. Lumpkins and Dr. Marion.  AT&T notes that MetLife sent the report of reviewing physician Kathleen Kelly to Ms. Williams attending physicians.  *Rec*. pp. 29 - 33 (Kelly Report).  Ms. Williams does not dispute this contention.  The reports of Dr. Lumpkins and Dr. Marion were created after Ms. Williams sought additional review of MetLife's determination that Ms. Williams no longer qualified for disability benefits.  The reports of Dr. Lumpkins and Dr. Marion were not sent to Ms. Williams' attending physicians.  AT&T argues that MetLife was not required to send these reports to Ms. Williams' attending physicians because these reports were obtained by MetLife as part of Ms. Williams' appeal of MetLife's initial denial of benefits and not as part of

MetLife's initial determination that Ms. Williams' benefits should be terminated. Ms. Williams argues that the procedure requires that reviewing physician reports "always" be provided to the employee's attending physician.

I conclude that MetLife's interpretation of this guideline is reasonable. The guideline does require that reviewing physician reports "always be sent to the employee's attending physician for review and or comment" but this sentence contains a further limitation. The report must be sent "prior to denying or terminating the claim." When the reports of Dr. Lumpkins and Dr. Marion were received by MetLife, Ms. Williams' claim had been terminated by MetLife. Construing and applying all of the words in the guideline, I conclude that the guideline does not require that the reviewing physician reports developed after the termination of benefits be sent to the employee's attending physician. The record does not support Ms. Williams' contention that MetLife ignored its procedures. Thus, this factor does not weigh in favor of a finding that MetLife abused its discretion.

**C. Failure to consider all available medical evidence & flawed analysis.**

Ms. Williams challenges the alleged failure of MetLife and its reviewing physicians to consider all available evidence and challenges the allegedly flawed analysis of MetLife's reviewing physicians. I trifurcate these contentions: (1) reviewing physicians' failure to consider Ms. Williams' complaints of pain; (2) reviewing physicians' failure to consider all relevant evidence and flawed analysis; and 3) emphasis on medical reports favoring denial of benefits.

<u>1) Reviewing physicians' failure to consider complaints of pain.</u>

Ms. Williams cites letters from her treating physicians, Dr. Colliton, Dr. Curry, and Dr. Barolat, indicating that she suffers from severe pain. She claims that MetLife's

reviewing physicians ignored her complaints of pain, and that this fact makes MetLife's termination of her benefits arbitrary and capricious.

MetLife's May 20, 2005, letter to Ms. Williams, in which MetLife advised Ms. Williams of its conclusion that she no longer was disabled for purposes of the plan, notes that "you do have chronic pain symptoms involving abdominal discomfort and back pain," and "a review of information in [the] file shows you have many complaints of pain." *Rec.*, p. 376. Dr. Lumpkins, a reviewing physician who reviewed Ms. Williams' case after she appealed the May 20, 2005, termination of benefits, concluded that Ms. Williams' medical records "support that Ms. Williams has a chronic pain syndrome, however, this does not substantiate impairment of her routine physical function." *Rec.*, p. 395.

Ms. Williams claims that MetLife did not provide Dr. Lumpkins will all relevant records, including a July 6, 2005, letter from Dr. Colliton, one of Ms. Williams' treating physicians. *Motion for summary judgment*, p. 17. Ms. Williams does not cite any evidence in support of this factual contention. If Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact. Absent a citation to evidence, I disregard this contention.

In its response to Ms. Williams' motion, AT&T cites the letters of the reviewing physicians engaged by MetLife, Dr. Kelley, Dr. Marion, and Dr. Lumpkins. *Response*, pp 7 - 9. In those letters, each of the reviewing physicians acknowledge Ms. Williams' complaints of pain and the assessments of Ms. Williams' pain made by Ms. Williams' treating physicians. Having considered the portions of the administrative record cited by AT&T in its motion, I conclude that the record does not support Ms. Williams' contention that MetLife's reviewing physicians ignored Ms. Williams' complaints of pain. Thus, this

factor does not weigh in favor of a finding that MetLife abused its discretion.

<u>2) Reviewing physicians' failure to consider</u>
<u>all relevant evidence and flawed analysis.</u>

Ms. Williams argues next that the reviewing physician's failure to consider her complaints of pain contributes to their flawed analysis. As discussed above, I conclude that the reviewing physicians did not fail to consider Ms. Williams' complaints of pain.

Ms. Williams argues also that Dr. Marion, a reviewing physician, prepared a report that is "replete with inconsistencies and flaws." *Motion for summary judgment* [#72], p. 14. She notes that Dr. Marion found that "Ms. Williams' objective spinal impairment is significant." *Rec.*, p. 822. She argues that , without any meaningful analysis, Dr. Marion concluded nonetheless that Ms. Williams could work in a sedentary duty occupation with certain limitations. Dr. Marion's letter does contain meaningful analysis of Ms. Williams' medical history and other facts indicated in the records reviewed by Dr. Marion. *Rec.*, pp. 343 - 347, 819 - 823.[4] Dr. Marion's analysis does not indicate a disregard of the conclusion that Ms. Williams' objective spinal impairment is significant. Rather, the letter indicates that Dr. Marion analyzed other relevant factors in light of this impairment. It was not arbitrary and capricious for MetLife to rely on Dr. Marion's analysis.

Ms. Williams challenges the opinions of Dr. Lumpkins, a reviewing physician, on similar grounds. Ms. Williams contends that Dr. Lumpkins ignored the opinions of Ms. Williams' treating physicians and adopted an opinion that is "completely contrary to the

---

[4] Dr. Marion's July 25, 2005, letter appears twice in the administrative record, at the two page ranges cited.

medical evidence." *Motion for summary judgment* [#72], p. 17.[5]  Three letters authored

by Dr. Lumpkins are in the administrative record.  *Rec.*, pp. 192 - 195, 301 - 303, 825 -

831.  Those three letters contain thorough reviews and analyses of Ms. Williams'

medical history and other facts indicated in the records reviewed by Dr. Lumpkins.  *Id.*

Dr. Lumpkins' analysis does not indicate a disregard of the conclusions reached by Ms.

Williams' treating physicians, including Ms. Williams' complaints of pain.  Rather, the

letters indicate that Dr. Lumpkins analyzed other relevant factors in light of the

conclusions of Ms. Williams' treating physicians.  It was not arbitrary and capricious for

MetLife to rely on Dr. Lumpkins' analysis.  Thus, this factor does not weigh in favor of a

finding that MetLife abused its discretion.

<u>3)  Emphasis on medical reports favoring denial of benefits.</u>

Ms. Williams argues also that MetLife gave greater emphasis to medical reports

favoring a denial of benefits as compared to the reports of her treating physicians, which

generally, although not exclusively, tend to support a determination that Ms. Williams is

disabled.  Notably, the report of Dr. Kleiner, one of Ms. Williams' treating physicians,

indicates that she is able to work on a limited basis.  *Rec.*, pp. 320 - 321 (report of

Tanya Lumpkins, M.D., summarizing Dr. Kleiner's assessment).  Such an emphasis by

a claims administrator, such as MetLife, can be seen as a factor indicating an abuse of

discretion. ***Rasenack ex rel. Tribolet v. AIG Life Ins. Co.***, 585 F.3d 1311, 1326 (10th

Cir. 2009) (citing ***Metropolitan Life Ins. Co. v. Glenn***, ___ U.S. ___, 128 S.Ct. 2343,

---

[5]  In this portion of her brief, the quotations by Ms. Williams  from the reports of Dr. Lumpkins are without citation to the record.  Again, if Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact.  Further, her failure to provide pinpoint citations to the administrative record, which consists of approximately 1,000 pages, violates REB Civ. Practice Standard II.D.3.  It is only via Ms. Williams' general citation to Dr. Lumkins' reports, found at page 8 of her motion, that I have been able to review Dr. Lumpkins' July 25, 2005, and June 29, 2006, reports.  It is only via AT&T's citation to Dr. Lumpkins' December 9, 2005, report that I have been able to review that report.

2352 (2008)).  In this case, the administrative record indicates that MetLife did emphasize the reports of its reviewing physicians, which supported a termination of disability benefits, and relied on those reports heavily, as compared to the reports of Ms. Williams' treating physicians.  Accordingly, this factor weighs in favor of a finding that MetLife abused its discretion.

4) Conclusion.

I have considered the parties' arguments, and the evidence cited, concerning the plaintiff's contentions that (1) the defendants' reviewing physicians failed to consider Ms. Williams' complaints of pain; (2) the defendants' reviewing physicians failed to consider all relevant evidence and engaged in a flawed analysis of the medical record; and (3) the defendants placed emphasis on medical reports favoring denial of benefits. Having considered the relevant portions of the administrative record cited by the parties, I conclude that the first and second contentions do not weigh in favor of a  finding that MetLife abused its discretion.  On the other hand, the third contention weighs in favor of a finding that MetLife abused its discretion.

**D.  Flawed employability assessment.**

Ms. Williams argues that MetLife improperly relied on a flawed employability assessment in making its determination to terminate Ms. Williams' disability benefits. Ms. Williams contends that MetLife relied on an employability assessment dated May 18, 2005, which was prepared by Daniel Rauch, MACRC.  Ms. Williams does not cite any evidence that shows the content of the purported employability assessment.  Again, if Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact. Absent a citation to evidence, I disregard her arguments about the employability assessment.

However, even if I accept the contentions of Ms. Williams, without any evidentiary basis, I reject her arguments concerning the employability assessment. Ms. Williams argues that Mr. Rauch relied only the medical history and restrictions provided from a medical records reviewer hired by MetLife, a reviewer who never met or examined Ms. Williams. She contends that MetLife's decision to accept these as the proper restrictions without any analysis as to the restrictions suggested by Ms. Williams' treating physician is inappropriate and undermines the validity of the employability assessment.

The evidence cited elsewhere by the parties indicates that MetLife hired Dr. Kelley, Dr. Marion, and Dr. Lumpkins as medical records reviewers. As discussed above, their reviews considered adequately Ms. Williams' medical record, including the opinions of her treating physicians. Assuming, without deciding, that the employability assessment is based on restrictions suggested by one or more of these three medical records reviewers, most likely Dr. Kelley, I conclude that there is no evidence in the record to support the contention that the employability assessment is flawed because it is based on restrictions suggested by one or more of the medical records reviewers rather than Ms. Williams' treating physician.

### E.  Failure to consider social security disability determination.

Ms. Williams receives social security disability benefits due to her medical condition. To receive these benefits, Ms. Williams was required to demonstrate that her physical impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(1). Initially, Ms. Williams' application for social security benefits was denied.

After the denial, MetLife referred Ms. Williams to a law firm for assistance in pursuing social security disability benefits. Ultimately, Ms. Williams was granted social security disability benefits. This decision came after MetLife had denied Ms. Williams' claim for disability benefits under the Plan and had reviewed Ms. Williams' appeals of that determination.

On August 21, 2007, Ms. Williams provided the Plan's claims administrator, AT&T Integrated Disability Service Center (IDSC), with a copy of the decision of the Social Security Administration in Ms. Williams' case and requested that the claims administrator review the social security decision. This occurred thirteen months after the Plan's claims administrator had heard and denied Ms. Williams' third appeal. IDSC refused to consider this additional information.

AT&T argues that the refusal of IDSC to consider the fact that Ms. Williams' was granted social security benefits may not be considered properly in determining whether MetLife or IDSC acted arbitrarily and capriciously in terminating Ms. Williams' benefits. Applying the arbitrary and capricious standard, a court "'generally may consider only the arguments and evidence before the administrator at the time it made [the challenged] decision.'" *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992)). The determination of the Social Security Administration in Ms. Williams' case was not part of the administrative record on which the defendants' decision was based. Therefore, that decision may not be considered in applying the arbitrary and capricious standard.

Ms. Williams' contends also that MetLife "referred" her to a law firm for assistance in obtaining social security disability benefits. *Motion for summary judgment*

[#72], p. 26.  Shortly after referring Ms. Williams to the law firm, Ms. Williams' asserts, MetLife terminated her disability benefits.  Ms. Williams contends also that it is improper for MetLife "to retain" a law firm to represent her before the Social Security Administration and thereafter determine that she is not disabled.  *Id.*  She contends that Met Life's "decision to hire" the law firm shows MetLife's understanding that Ms. Williams' is disabled.  Ms. Williams does not cite any evidence or authority in support of these assertions.  If Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact. Absent a citation to evidence, I may disregard these contentions.  I note that AT&T does not dispute these contentions in its response [#88].  Even if I were to indulge Ms. Williams' contentions on this point, despite the lack of evidence, her contentions would provide, at most, only a modicum of support for her general contention that MetLife acted arbitrarily and capriciously.

### F.  Failure to demonstrate improvement  in condition.

Ms. Williams notes that the Plan paid disability benefits to her for about three and one half years, and then the Plan terminated her benefits.  She argues that it is arbitrary and capricious for the Plan to conclude that she is entitled to disability benefits for a period of time and then to conclude that she no longer is disabled, unless the Plan can demonstrate an improvement in her condition.  This argument relies on the assumption that the Plan's initial disability determination necessarily was correct and that the initial determination must be challenged with new evidence before it may be changed.  On its terms, the Plan does not operate in this way.  The Plan provides that MetLife has the right periodically to reexamine Ms. Williams' medical records to reassess whether she remained disabled. *Rec.*, p. 1196.  Further, even if a change in Ms. Williams' condition

was required for MetLife to terminate her benefits, I note that the reports of each of the three reviewing physicians indicated a change in Ms. Williams' condition because each of those reports indicate that Ms. Williams is able to work with some restrictions. That is a change from the previous determination that Ms. Williams was disabled. Thus, this factor does not weigh in favor of a finding that MetLife abused its discretion.

## G. Conclusion

Having reviewed the plaintiff's contentions in light of the ***Glenn*** factors, I conclude that only one of the factors weighs in favor of a finding that the Plan acted arbitrarily and capriciously in terminating the plaintiff's disability benefits. That factor is MetLife's emphasis of doctors' reports favoring a termination of benefits. However, considering all of the factors and the record as a whole, I conclude that this single factor does not, on its own, demonstrate that MetLife acted arbitrarily and capriciously. Rather, considering the record as a whole, I conclude that the Plan's decision to terminate Ms. Williams' benefits is grounded on a reasonable basis. ***Kimber v. Thiokol Corp.***, 196 F.3d 1092, 1098 (10th Cir. 1999). The record contains conflicting medical opinions about Ms. Williams' ability to work under certain restrictions, and the Plan's reliance on the medical opinions indicating that Ms. Williams has some ability to work falls "somewhere on a continuum of reasonableness – even if on the low end." ***Id***. The evaluations of MetLife's medical consultants generally are well-founded and are not inherently flawed or unreliable. The record in this case demonstrates that MetLife's evaluation of Ms. Williams' claim for disability benefits employed a reasoned and principled process. It was not arbitrary and capricious for MetLife to rely on the opinions of its medical consultants as a basis to terminate her benefits. Thus, I deny the plaintiff's motion for summary judgment.

## V. AT&T DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, the AT&T defendants, the Plan and the AT&T Integrated Disability Service Center, analyze the administrative record and the applicable law, arguing that there is no basis to conclude that MetLife's decision to terminate Ms. Williams' disability benefits was arbitrary and capricious. In essence, their motion is an analysis of the evidence discussed above from a slightly different perspective.

Based on my analysis of the evidence cited by Ms. Williams in her motion for summary judgment and my conclusion that Ms. Williams has not shown that MetLife's determination, on behalf of the Plan, was arbitrary and capricious, I conclude that the AT&T defendants are entitled to summary judgment. Absent a showing that the termination of Ms. Williams' benefits was arbitrary and capricious, the decision of the Plan must be upheld. The administrative record does not support Ms. Williams' contention that the termination of benefits constituted an abuse of discretion.

The AT&T defendants seek summary judgment also on Ms. Williams' second claim for relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). In essence, she claims that the termination of her disability benefits constituted a breach of fiduciary duty under ERISA. The AT&T defendants argue that because Ms. Williams has a right to assert a claim for restoration of her benefits under 29 U.S.C. § 1132, a claim she asserts in her first claim for relief, she may not assert a duplicative breach of fiduciary duty claim in her second claim for relief.

On this issue, I agree with the analysis of the Honorable Lewis T. Babcock, a Senior United States District Judge for the District of Colorado:

The Supreme Court in ***Varity Corp. v. Howe***, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), addressed the relief authorized by 29 U.S.C. § 1132(a)(3): "the statute authorizes 'appropriate' equitable relief. We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.' " ***Id***. at 515, 116 S.Ct. 1065 (citing ***Pilot Life Ins. Co.***, 481 U.S. at 54, 107 S.Ct. 1549). The Court concluded that relief authorized by this section is limited.

> Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

***Id***.

***Klover v. Antero Healthplans***, 64 F.Supp.2d 1003, 1012 (D.Colo.,1999). Ms. Williams second claim for relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), is duplicative of her first claim for relief. Thus the AT&T defendants are entitled to summary judgment on this claim.

The AT&T defendants' motion for summary judgment must be granted on Ms. Williams' first and second claims for relief.

## VI. METLIFE'S MOTION FOR SUMMARY JUDGMENT & MOTION FOR ASSESSMENT OF PENALTIES

In its motion for summary judgment, MetLife joins the arguments of the AT&T defendants as to the plaintiff's first and second claims for relief. As discussed above, AT&T is entitled to summary judgment on Ms. Williams' first and second claims for relief. To the extent Ms. Williams' first and second claims are asserted against MetLife, MetLife is entitled also to summary judgment on the same basis.

MetLife's motion for summary judgment addresses also Ms. William's third claim for relief. In her third claim, Ms. Williams alleges that MetLife, as the claims administrator of the Plan, failed to comply with its statutory obligation timely to provide

Ms. Williams with documents she requested from the Plan. Ms. Williams addresses this claim in her motion for assessment of penalties [#77] and in her reply in support of that motion [#92].

Ms. Williams contends that she requested from MetLife, in writing via facsimile and certified U.S. mail, a complete copy of her claim file, the summary plan description, the policy, and other plan documents, including statements of policies, guidelines, protocols or pertinent sections of MetLife's claims manual, as well as information regarding MetLife's physician consultant review. *Motion for assessment of penalties* [#77], p. 2; *Rec.*, pp. 171 - 173 (letter requesting documents). This request was made on February 26, 2007. Ms. Williams represents that the claim file was sent on August 7, 2007, but that the other documents requested were not provided.

Title 29 U.S.C. § 1132(c)(1) provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Ms. Williams contends that MetLife should be penalized under § 1132(c)(1) for its failure to provide certain requested documents to Ms. Williams.

Concerning the delay in providing the claim file to Ms. Williams, I conclude that the administrative record shows that the delay in providing the claim file was caused by bureaucratic confusion as opposed to neglect of Ms. Williams' request. I base this conclusion on MetLife's notes concerning Ms. Williams' request for a copy of the claim

file. *Rec.*, pp. 167 - 168, 171 - 173, 177. Thus, with regard to the delay in providing the claim file, I exercise my discretion under § 1132(c)(1), and I decline to impose a penalty on MetLife for the delay in providing the claim file to Ms. Williams.

Ms. Williams' other requests were for Plan documents. I note that the Plan documents provide that AT&T Corp. is designated as the Plan Administrator and that requests for Plan documents should be directed to the Plan Administrator. *Rec.*, pp. 1203 - 1204. MetLife, on the other hand, is designated as a Claims Administrator. *Rec.*, p. 1203. To the extent Ms. Williams requested from MetLife copies of Plan documents, her request was directed to the wrong entity under the terms of the Plan. Under these circumstances, Ms. Williams cannot successfully maintaint a claim under § 1132(c)(1) for MetLife's failure to deliver copies of the Plan documents she requested.

Having reviewed the record, I exercise my discretion under § 1132(c)(1), and I decline to impose a penalty on MetLife for the delay in providing the claim file to Ms. Williams. In addition, I conclude that Ms. Williams may not seek the imposition of a penalty against MetLife under § 1132(c)(1) based on MetLife's alleged failure to provide Ms. Williams with Plan documents. Under the terms of the Plan, it was the obligation of AT&T Corp., not MetLife, to provide copies of Plan documents. Ms. Williams did not request Plan documents from AT&T Corp. Thus, MetLife is entitled to summary judgment on Ms. Williams' third claim for relief.

For the reasons discussed above, I grant MetLife's motion for summary judgment on Ms. Williams' first, second, and third claims for relief, and I deny Ms. Williams' motion for assessment of penalties.

## VII. PLAINTIFF'S MOTION IN LIMINE

In her motion in limine [#102], Ms. Williams contends that AT&T's motion for

summary judgment contains "blatantly false statements" indicating that one of Ms. Williams' treating physicians is not board certified. I have considered Ms. Williams' explanation of the status of this physician's board certification and conclude that her explanation is undisputed. However, the status of this physician's board certification carries no weight in my analysis of the administrative record in this case. Therefore, I deny the motion in limine as moot.

## VIII. CONCLUSION & ORDERS

I have reviewed the plaintiff's claim that the defendants' termination of her disability benefits was arbitrary and capricious. Specifically, I have reviewed the portions of the administrative record [#59 (sealed version)] & [#60 (public entry for [#59])] cited by the parties, as well as the factors and considerations that I must consider under the applicable law. I conclude ultimately that the plaintiff has not demonstrated that the defendants' termination of her disability benefits was arbitrary and capricious. I conclude, therefore, that the plaintiff's motion for summary judgment must be denied and that the AT&T defendants' motion for summary judgment must be granted.

In addition, I have considered MetLife's motion for summary judgment, which adopts the AT&T defendants' motion for summary judgment to the extent the plaintiff's first and second claims – her claims for benefits under the Plan – are asserted against MetLife. MetLife's motion for summary judgment on the plaintiff's first and second claims must be granted for the same reasons that the AT&T defendants' motion for summary judgment on these claims must be granted.

MetLife's motion for summary judgment addresses also the plaintiff's third claim for relief, which concerns MetLife's alleged failure to provide the plaintiff with documents

as required by 29 U.S.C. § 1132(c)(1). The plaintiff's motion for assessment of penalties [#77] seeks, in essence, summary judgment for the plaintiff on this claim. I conclude that MetLife is entitled to summary judgment on the plaintiff's third claim for relief and for the same reasons that the plaintiff's motion for assessment of penalties must be denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **AT&T Defendants' Motion for Summary Judgment on First and Second Claims** [#66  (sealed version)],  [#67 (redacted version)], & [#68 (public entry for [#66])] filed November 30, 2009, is **GRANTED**;

2. That the **Plaintiff's Combined Cross-Motion and Brief in Support for Summary Judgment To Reverse Defendants' Decision To Terminate her Long-Term Disability Benefits** [#72 (sealed version)], [#73 (redacted version)], & [#75 (public entry for [#72])] filed December 11, 2009, is **DENIED**;

3. That the **Plaintiff's Motion for Assessment of Penalties Against Defendant Metlife under 29 U.S.C. § 1132(c)** [#77] filed December 21, 2009, is **DENIED**;

4. That  **MetLife's Combined Motion and Brief for Summary Judgment** [#83] filed January 8, 2010, is **GRANTED**;

5. That the **Plaintiff's Motion In Limine To Exclude Defamatory and Irrelevant Reference to Board Certification of Plaintiff's Treating Physician** [#102] filed February 8, 2010, is **DENIED** as moot;

6. That **JUDGMENT SHALL ENTER** in favor of the defendants, AT&T Long Term Disability Plan for Occupational Employees, an ERISA Welfare Benefit Plan,

AT&T Integrated Disability Service Center, and Metropolitan Life Insurance Company,

against the plaintiff, Kandace Williams; and

7. That the defendants are **AWARDED** their costs to be taxed by the Clerk of the

Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated September 30, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge