**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 07-cv-2062-REB-CBS

KANDACE WILLIAMS,

     Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York insurance company,
AT&T LONG TERM DISABILITY PLAN FOR OCCUPATIONAL EMPLOYEES, an
ERISA welfare benefit plan, and
AT&T INTEGRATED DISABILITY SERVICE CENTER,

     Defendants.

---

**AMENDED[1]
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
& RESOLVING RELATED MOTIONS**

---

**Blackburn, J.**

     This matter is before me on the following motions: (1) the **AT&T Defendants'**

**Motion for Summary Judgment on First and Second Claims** [#66[2] (sealed version)],

[#67 (redacted version)], & [#68 (public entry for [#66])] filed November 30, 2009; (2) the

**Plaintiff's Combined Cross-Motion and Brief in Support for Summary Judgment**

**To Reverse Defendants' Decision To Terminate her Long-Term Disability Benefits**

---

[1]   The amendments in this order concern the amendments requested in MetLife's motion [#115] seeking relief under Fed. R. Civ. P. 60(a).  The amendments are limited to a) changes in the language in section IV.B. on pages 9 and 10; b) the re-numbering of footnotes necessitated by the addition of this footnote one (1); and c) changes in the orders entered on pages 23 and 24, to make this amended order effective.

[2]   "[#66]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[#72 (sealed version)], [#73 (redacted version)], & [#75 (public entry for [#72])] filed

December 11, 2009; (3) the **Plaintiff's Motion for Assessment of Penalties Against**

**Defendant Metlife under 29 U.S.C. § 1132(c)** [#77] filed December 21, 2009; (4)

**MetLife's Combined Motion and Brief for Summary Judgment** [#83] filed January 8,

2010; and (5) the **Plaintiff's Motion in Limine to Exclude Defamatory and Irrelevant**

**Reference to Board Certification of Plaintiff's Treating Physician** [#102] filed

February 8, 2010.  The parties filed responses [#66, #76, #88, #101, #104] and replies

[#99, #100, #109] addressing two of the motions for summary judgment.  Defendant,

Metropolitan Life Insurance Company, filed a response [#84] to the motion for

assessment of penalties, and the plaintiff filed a reply [#92] in support of her motion.

Defendant, AT&T Long Term Disability Plan for Occupational Employees, filed a

response[#108] to the motion in limine, and the plaintiff filed a reply [#110].  I grant the

defendants' motions for summary judgment, and I deny the plaintiff's motion for

summary judgment.[3]  I deny the plaintiff's motion for assessment of penalties and the

plaintiff's motion in limine.

## I.  JURISDICTION

I have jurisdiction over this case under 18 U.S.C. § 1331 (federal question) and

29 U.S.C. § 1132(e)(1) and (f) (ERISA).

## II.  FACTS

This lawsuit arises out of Defendant Metropolitan Life Insurance Company of

America's ("MetLife") termination of the plaintiff's disability benefits under a long-term

---

[3] The issues raised by and inherent to the cross motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

disability ("LTD") plan provided by the plaintiff's prior employer, AT&T, Corp., under the AT&T Long Term Disability Plan for Occupational Employees (Plan).  The plaintiff, Kandace Williams, has been unable to return to her prior occupation since September 13, 2001.  After leaving work , Ms. Williams made a claim for disability benefits under the Plan.  MetLife, the Plan's claims administrator, certified Ms. Williams' LTD benefit for approximately three years and six months, from December 14, 2001 through May 31, 2005. MetLife terminated her disability benefits on May 20, 2005, stating that the medical information did not show a severity of disability that would preclude Ms. Williams from doing any other job for which she is qualified.  Ms. Williams filed a timely appeal, and on August 1, 2005, MetLife upheld its adverse benefit determination. Ms. Williams subsequently provided additional information in support of her claim. On December 22, 2005, MetLife informed Ms. Williams that the information did not change its prior determination.

Ms. Williams' claims in this case arise under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 - 1461.  Before her 2001 claim for disability benefits, Ms. Williams served as a Production Assistant with AT&T.  In 2001, she sought disability benefits because she was no longer able to work due to several chronic medical conditions, including severe back pain resulting from a car accident in September of 2001.  I describe her conditions only generally, because Ms. Williams has redacted from the public version of her motion for summary judgment the detailed description of her medical conditions.  She has undergone several surgeries and her treatment has included substantial medication usage, including highly potent pain relievers.  In addition to her back pain, Ms. Williams suffers from other conditions documented in the record.  Ms. Williams contends that, due to the debilitating effect of

these conditions, she has been unable to return to her prior occupation or any other

occupation since September 13, 2001.

The AT&T Plan defines disability as follows:

You're unable to do any job for any employer for which:

• You're qualified, or

• You may become reasonably qualified by training, education or experience, other than a job that pays less than 50% of your Eligible Base Pay at the time you became disabled.

*Administrative record* [#59 (sealed version)] & [#60 (public entry for [#59])], p. 1195.

Hereafter, I will cite the administrative record as "*Rec.*" with a page number.

The Plan is defendant AT&T Long Term Disability Plan for Occupational

Employees.  AT&T Corp. is the designated Plan Administrator and defendant

Metropolitan Life Insurance Company (MetLife) was, at the relevant times, the

designated Claims Administrator for the Plan.  *Rec.*, p. 1203.  MetLife made the

determination that Ms. Williams' disability benefits should be terminated. After Ms.

Williams' benefits were terminated, defendant AT&T Integrated Disability Service Center

became the Claims Administrator for the Plan.

Ms. Williams asserts three claims in her complaint.  In her first claim for relief,

she asserts a claim for benefits under the terms of the Plan.  Under 29 U.S.C. §

1132(a)(1)(B), a plan beneficiary may assert a claim for benefits.  Necessarily, this claim

is asserted against defendant AT&T Long Term Disability Plan for Occupational

Employees, the only source of Plan benefits.  In her second claim for relief, Ms.

Williams asserts a claim for breach of ERISA fiduciary duty against MetLife under 29

U.S.C. § 1104(a)(3).  She contends that, as the Plan's claims administrator, MetLife

breached its fiduciary duty to Ms. Williams when MetLife terminated Ms. Williams'

disability benefits.  In her third claim for relief, Ms. Williams asserts a claim against

MetLife under 29 U.S.C. § 1132(c)(1).  Ms. Williams alleges that MetLife failed timely to

provide to Ms. Williams documents she requested from MetLife relevant to Ms. Williams'

claim for benefits under the plan.

### III.  STANDARD OF REVIEW

ERISA provides a detailed and comprehensive set of federal regulations

governing the provision of benefits to employees by employers.  Under 29 U.S.C.

§ 1132(a), part of ERISA, a plan beneficiary has the right to federal court review of

benefit denials and terminations. The statute does "not establish the standard of review

for such decisions." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 824-25

(10th Cir.1996).  In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the

Supreme Court established the basic framework for determining the standard of review

in ERISA cases that challenge the denial or termination of benefits.  "(A) denial of

benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489

U.S. at 115.  If the plan provides for such discretion, then the proper standard of review

is abuse of discretion.  *Id*.  Ms. Williams concedes that the Plan at issue here gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits, and

the abuse of discretion standard of review is applicable.  *Motion for summary judgment*

[#72 (sealed version)], [#73 (redacted version)] pp. 8 - 9.

Under the arbitrary and capricious standard of review, the Plan's decision need

not be the only logical decision nor even the best decision.  Rather, the decision need

only be sufficiently supported by facts known to the Plan to counter a claim that the

decision was arbitrary or capricious.  The decision will be upheld unless it is not grounded on any reasonable basis.  ***Kimber v. Thiokol Corp.***, 196 F.3d 1092, 1098 (10th Cir. 1999).  The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness - even if on the low end."  ***Id***. (quoting ***Vega v. National Life Ins. Serv., Inc.***, 188 F.3d 287, 297 (5th Cir. 1999)).

The United States Supreme Court recently outlined several considerations that are relevant to a reviewing court's application of the arbitrary and capricious standard. ***Metropolitan Life Ins. Co. v. Glenn***, 554 U.S. 105, ___, 128 S.Ct. 2343, 2351 - 2352 (2008).  These factors include: 1) any potential conflict of interest; 2) the quality and quantity of the medical evidence; 3) whether the plan or claims administrator provided greater emphasis to medical reports favoring a denial of benefits as opposed to those supporting a determination of disability; 4) whether the plan or claims administrator provided its reviewing physicians and other experts with all of the relevant evidence; 5) whether the plan or claims administrator "has taken active steps to remove bias and promote accuracy;" and 6) whether the plan or claims administrator considered any social security disability determination, including whether the administrator encouraged the claimant to apply for social security disability benefits, and then ignored a social security disability determination.  ***Id***.  This list of considerations is not exhaustive.

In ***Glenn***, the Court held that when an ERISA insurer holds a dual role in which it "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" that insurer has a conflict of interest.  ***Metropolitan Life Ins. Co. v. Glenn***, 554 U.S. 105, ___, 128 S.Ct. 2343, 2346 (2008).  Ms. Williams does not claim that such a conflict of interest exists in this case. Ms. Williams argues, however, that all of the other factors weigh in favor of her contention that the defendants' termination of

her disability benefits was arbitrary an capricious.

Generally, summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).  In this case, the administrative record [#59 (sealed version)] & [#60 (public entry for [#59])]     provides all of the relevant facts and there is no contention that the administrative record is incomplete or inaccurate.  The undisputed and relevant facts are established, and the only remaining question is an evaluation of MetLife's benefits determination under the legal standard of review outlined above.  After this review is complete, either the plaintiff or the defendants necessarily will be entitled to judgment as a matter of law.

## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the purpose of applying the ***Glenn*** factors to the determination at issue in this case, I adopt, at least in a general sense, the plaintiff's statement of these factors, as stated in her motion for summary judgment.

### A.  MetLife's reviewing physicians were biased.

Ms. Williams contends that MetLife relied almost entirely on opinions rendered by reviewing physicians hired by MetLife.  These physicians reviewed Ms. Williams medical records and opined that Ms. Williams is not disabled.  These doctors never examined or spoke to Ms. Williams.  Ms. Williams argues that MetLife's decision to credit the opinions of the reviewing physicians, and to disregard the opinions of her treating physicians, indicates an abuse of discretion by MetLife.  Some of Ms. Williams' argument on this point implicates also Ms. Williams' claim that the reviewing physicians' did not review all of the evidence and that their analysis is flawed.  I will consider here Ms. Williams' claim that the reviewing physicians were biased.  I will consider below Ms.

Williams' contentions that the reviewing physicians did not consider all of the evidence and used a flawed analysis.

Citing several other cases from other courts, Ms. Williams argues that two of MetLife's reviewing physicians, Dr Lumpkins and Dr. Marion, are biased.  Both of these doctors are employed by Elite Physicians, a subsidiary of Network Medical Review (NMR).  Citing evidence developed in other cases, Ms. Williams contends, for example, that in 2005, NMR derived over 25 percent of its revenue performing medical record reviews for MetLife.  In essence, Ms. Williams claims that NMR, Dr. Lumpkins, and Dr. Marion have a financial incentive to make findings that the patients whose records they review are not disabled.

AT&T argues that the theory that reviewing physicians have an inherent bias or conflict in every case, because they are hired by a claims administrator, is not sufficient to alter the usual application of the arbitrary and capricious standard in an ERISA case. *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir. 2006).  I agree with the *Davis* court that a showing of bias requires a plaintiff to show that the reviewing physicians had a specific incentive to derail the plaintiff's disability claim.  No such incentive has been shown here.  AT&T challenges the admissibility of much of the evidence cited by Ms. Williams in support of her claim of bias.  I agree with AT&T that the admissibility of some of the evidence cited by Ms. Williams is, at best, questionable.  However, I need not resolve this issue here because I conclude that the evidence cited by Ms. Williams is not sufficient to demonstrate that MetLife's reviewing physicians, Dr. Lumpkins and Dr. Marion, exhibited any significant bias in reviewing Ms. Williams' claim.  Ms. Williams cites also claimed inconsistencies and flawed procedures in Dr. Lumpkins and Dr. Marion's reports as evidence of their bias.  I analyze these contentions IV.C. of

this order, below.  I conclude that Ms. Williams has not shown inconsistencies or flawed procedures that show significant bias on the part of Dr. Lumpkins and Dr. Marion.  This factor does not weigh in favor of a finding that MetLife abused its discretion.

### B.  MetLife ignored its own procedures.

Ms. Williams contends that MetLife ignored one of its procedures concerning tender of a reviewing physician's report to the employee's attending treating physician.  The relevant MetLife procedure is contained in a sealed document filed with the court.  *Plaintiff's Combined Cross-Motion and Brief in Support for Summary Judgment To Reverse Defendants' Decision To Terminate her Long-Term Disability Benefits* [#72 (sealed version)], Exhibit 11.  I have reviewed the guideline.

Ms. Williams contends that MetLife failed to follow its guideline with the reports of reviewing physicians  Dr. Lumpkins and Dr. Marion.  AT&T notes that MetLife sent the report of reviewing physician Kathleen Kelly to Ms. Williams' attending physicians.  *Rec.* pp. 29 - 33 (Kelly Report).  Ms. Williams does not dispute this contention.  The reports of Dr. Lumpkins and Dr. Marion were created after Ms. Williams sought additional review of MetLife's determination that Ms. Williams no longer qualified for disability benefits.  The reports of Dr. Lumpkins and Dr. Marion were not sent to Ms. Williams' attending physicians.  AT&T argues that MetLife was not required to send these reports to Ms. Williams' attending physicians because these reports were obtained by MetLife as part of Ms. Williams' appeal of MetLife's initial denial of benefits, and not as part of MetLife's initial determination that Ms. Williams' benefits should be terminated.  Ms. Williams argues that, applying MetLife's procedure, these reports should have been provided to her attending physician.

I conclude that MetLife's interpretation of its guideline is reasonable.  When the

reports of Dr. Lumpkins and Dr. Marion were received by MetLife, Ms. Williams' claim had been terminated by MetLife.  Applying all of the words in the guideline, the guideline does not require that the reviewing physician reports developed after the termination of benefits be sent to the employee's attending physician.  The record does not support Ms. Williams' contention that MetLife ignored its procedures.  This factor does not weigh in favor of a finding that MetLife abused its discretion.

### C.  Failure to consider all available medical evidence & flawed analysis.

Ms. Williams challenges the alleged failure of MetLife and its reviewing physicians to consider all available evidence and the allegedly flawed analysis of MetLife's reviewing physicians.  I divide these contentions into **three** categories: 1) reviewing physicians' failure to consider Ms. Williams' complaints of pain; 2) reviewing physicians' failure to consider all relevant evidence and flawed analysis; and 3) emphasis on medical reports favoring denial of benefits.

<u>1) Reviewing physicians' failure to consider complaints of pain.</u>

Ms. Williams cites letters from her treating physicians, Dr. Colliton, Dr. Curry, and Dr. Barolat, indicating that she suffers from severe pain.  She claims that MetLife's reviewing physicians ignored her complaints of pain, and this fact makes MetLife's termination of her benefits arbitrary and capricious.

MetLife's May 20, 2005, letter to Ms. Williams, in which MetLife advised Ms. Williams of its conclusion that she no longer was disabled for purposes of the plan, notes that "you do have chronic pain symptoms involving abdominal discomfort and back pain" and "a review of information in [the] file shows you have many complaints of pain."  *Rec.*, p. 376.  Dr. Lumpkins, a reviewing physician who reviewed Ms. Williams' case after she appealed the May 20, 2005, termination of benefits, concluded that Ms.

Williams' medical records "support that Ms. Williams has a chronic pain syndrome, however, this does not substantiate impairment of her routine physical function." *Rec.*, p. 395.

Ms. Williams claims that MetLife did not provide Dr. Lumpkins will all relevant records, including a July 6, 2005, letter from Dr. Colliton, one of Ms. Williams' treating physicians. *Motion for summary judgment*, p. 17.  Ms. Williams does not cite any evidence in support of this factual contention.  If Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact. Absent a citation to evidence, I disregard this contention.

In its response to Ms. Williams' motion, AT&T cites the letters of the reviewing physicians engaged by MetLife, Dr. Kelley, Dr. Marion, and Dr. Lumpkins. *Response*, pp 7 - 9.  In those letters, each of the reviewing physicians acknowledge Ms. Williams' complaints of pain and the assessments of Ms. Williams' pain made by Ms. Williams' treating physicians. Having considered the portions of the administrative record cited by AT&T in its motion, I conclude that the record does not support Ms. Williams' contention that MetLife's reviewing physicians ignored Ms. Williams' complaints of pain.  This factor does not weigh in favor of a finding that MetLife abused its discretion.

<u>2) Reviewing physicians' failure to consider<br>all relevant evidence and flawed analysis.</u>

Ms. Williams argues, as part of this contention, that the reviewing physician's failure to consider her complaints of pain contributes to their flawed analysis.  As discussed above, I conclude that the reviewing physicians did not fail to consider Ms. Williams' complaints of pain.

Ms. Williams argues also that Dr. Marion, a reviewing physician, prepared a

report that is "replete with inconsistencies and flaws." *Motion for summary judgment* [#72], p. 14.  She notes that Dr. Marion found that "Ms. Williams' objective spinal impairment is significant." *Rec.*, p. 822.  She argues that , without any meaningful analysis, Dr. Marion concluded nonetheless that Ms. Williams could work in a sedentary duty occupation with certain limitations. Dr. Marion's letter does contain meaningful analysis of Ms. Williams' medical history and other facts indicated in the records reviewed by Dr. Marion.  *Rec.*, pp. 343 - 347, 819 - 823.[4]  Dr. Marion's analysis does not indicate a disregard of the conclusion that Ms. Williams' objective spinal impairment is significant.  Rather, the letter indicates that Dr. Marion analyzed other relevant factors in light of this impairment.  It was not arbitrary and capricious for MetLife to rely on Dr. Marion's analysis.

Ms. Williams challenges the opinions of Dr. Lumpkins, a reviewing physician, on similar grounds.  Ms. Williams contends that Dr. Lumpkins ignored the opinions of Ms. Williams' treating physicians, and adopted an opinion that is "completely contrary to the medical evidence." *Motion for summary judgment* [#72], p. 17.[5]  Three letters authored by Dr. Lumpkins are in the administrative record.  *Rec.*, pp. 192 - 195, 301 - 303, 825 - 831.  Dr. Lumpkins' letters contain thorough reviews and analyses of Ms. Williams' medical history and other facts indicated in the records reviewed by Dr. Lumpkins.  *Id.*

---

[4]  Dr. Marion's July 25, 2005, letter appears twice in the administrative record, at the two page ranges cited.

[5]  In this portion of her brief, Ms. Williams' quotes from the reports of Dr. Lumpkins without citation to the record.  Again, if Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact.  Further, her failure to provide pinpoint citations to the administrative record, which consists of approximately 1,000 pages, violates REB Civ. Practice Standard II.D.3.  It is only via Ms. Williams' general citation to Dr. Lumkins' reports, found at page 8 of her motion, that I have been able to review Dr. Lumpkins' July 25, 2005, and June 29, 2006, reports. It is only via AT&T's citation to Dr. Lumpkins' December 9, 2005, report that I have been able to review that report.

Dr. Lumpkins' analysis does not indicate a disregard of the conclusions reached by Ms. Williams' treating physicians, including Ms. Williams' complaints of pain.  Rather, the letters indicate that Dr. Lumpkins analyzed other relevant factors in light of the conclusions of Ms. Williams' treating physicians.  It was not arbitrary and capricious for MetLife to rely on Dr. Lumpkins' analysis.  This factor does not weigh in favor of a finding that MetLife abused its discretion.

3)  Emphasis on medical reports favoring denial of benefits.

Ms. Williams argues also that MetLife gave greater emphasis to medical reports favoring a denial of benefits, as compared to the reports of her treating physicians, which generally, although not exclusively, tend to support a determination that Ms. Williams is disabled.  Notably, the report of Dr. Kleiner, one of Ms. Williams' treating physicians, indicates that she is able to work on a limited basis.  *Rec.*, pp. 320 - 321 (report of Tanya Lumpkins, M.D., summarizing Dr. Kleiner's assessment).  Such an emphasis by a claims administrator, such as MetLife, can be seen as a factor indicating an abuse of discretion. *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1326 (10th Cir. 2009) (citing *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S.Ct. 2343, 2352 (2008)).  In this case, the administrative record indicates that MetLife did emphasize the reports of its reviewing physicians, which supported a termination of disability benefits, and relied on those reports heavily, as compared to the reports of Ms. Williams' treating physicians.  This factor weighs in favor of a finding that MetLife abused its discretion.

4) Conclusion.

I have considered the parties' arguments, and the evidence cited, concerning the plaintiff's contentions that 1) the defendants' reviewing physicians failed to consider Ms.

Williams' complaints of pain; 2) the defendants' reviewing physicians failed to consider

all relevant evidence and engaged in a flawed analysis of the medical record; and 3) the

defendants placed emphasis on medical reports favoring denial of benefits.  Having

considered the relevant portions of the administrative record cited by the parties, I

conclude that the first and second contentions do not weigh in favor of a  finding that

MetLife abused its discretion.  On the other hand, the third contention weighs in favor of

a finding that MetLife abused its discretion.

### D.  Flawed employability assessment.

Ms. Williams argues that MetLife improperly relied on a flawed employability

assessment in making its determination to terminate Ms. Williams' disability benefits.

Ms. Williams contends that MetLife relied on an employability assessment dated May

18, 2005, which was prepared by Daniel Rauch, MACRC.  Ms. Williams does not cite

any evidence that shows the content of the purported employability assessment.  Again,

if Ms. Williams seeks to establish a fact in support of her motion for summary judgment,

she must cite and submit evidence to establish that fact. Absent a citation to evidence, I

disregard her arguments about the employability assessment.

Even if I accept the contentions of Ms. Williams, without any evidentiary basis, I

reject her arguments concerning the employability assessment.  Ms. Williams argues

that Mr. Rauch relied only the medical history and restrictions provided from a medical

records reviewer hired by MetLife, a reviewer who never met or examined Ms. Williams.

She contends that MetLife's decision to accept these as the proper restrictions, without

any analysis as to the restrictions suggested by Ms. Williams' treating physician, is

inappropriate and undermines the validity of the employability assessment.

The evidence cited elsewhere by the parties indicates that MetLife hired Dr.

Kelley, Dr. Marion, and Dr. Lumpkins as medical records reviewers.  As discussed above, their reviews consider adequately Ms. Williams' medical record, including the opinions of her treating physicians.  Assuming, without deciding, that the employability assessment is based on restrictions suggested by one or more of these three medical records reviewers, most likely Dr. Kelley, I conclude that there is no evidence in the record to support the contention that the employability assessment is flawed because it is based on restrictions suggested by one or more of the medical records reviewers rather than Ms. Williams' treating physician.

### E.  Failure to consider social security disability determination.

Ms. Williams receives social security disability benefits due to her medical condition.  To receive these benefits, Ms. Williams was required to demonstrate that her physical impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §423(d) (1).  Initially, Ms. Williams' application for social security benefits was denied.  After the denial, MetLife referred Ms. Williams to a law firm for assistance in pursuing social security disability benefits.  Ultimately, Ms. Williams was granted social security disability benefits.  This decision came after MetLife had denied Ms. Williams' claim for disability benefits under the Plan and had reviewed Ms. Williams' appeals of that determination.

On August 21, 2007, Ms. Williams provided the Plan's claims administrator, AT&T Integrated Disability Service Center (IDSC), with a copy of the decision of the Social Security Administration in Ms. Williams' case and requested that the claims administrator review the social security decision.  This occurred thirteen months after

the Plan's claims administrator had heard and denied Ms. Williams' third appeal.  IDSC refused to consider this additional information.

AT&T argues that IDSC's refusal to consider the fact that Ms. Williams' was granted social security benefits may not be considered properly in determining whether MetLife or IDSC acted arbitrarily and capriciously in terminating Ms. Williams' benefits. Applying the arbitrary and capricious standard, a court "'generally may consider only the arguments and evidence before the administrator at the time it made [the challenged] decision.'"  *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992)).  The determination of the Social Security Administration in Ms. Williams' case was not part of the administrative record in which the defendants' decision was based.  Therefore, that decision may not be considered in applying the arbitrary and capricious standard.

Ms. Williams' contends also that MetLife "referred" her to a law firm for assistance in obtaining social security disability benefits.  *Motion for summary judgment* [#72], p. 26.  Shortly after referring Ms. Williams to the law firm, Ms. Williams' asserts, MetLife terminated her disability benefits.  Ms. Williams also contends that it is improper for MetLife "to retain" a law firm to represent her before the Social Security Administration and thereafter determine that she is not disabled.  *Id*.  She contends that Met Life's "decision to hire" the law firm shows MetLife's understanding that Ms. Williams' is disabled.  Ms. Williams does not cite any evidence in support of these factual contentions.  If Ms. Williams seeks to establish a fact in support of her motion for summary judgment, she must cite and submit evidence to establish that fact. Absent a citation to evidence, I may disregard these contentions.  I note that AT&T does not

16

dispute these contentions in its response [#88].  Even if I were to indulge Ms. Williams'

contentions on this point, despite the lack of evidence, her contentions would provide, at

most, only a modicum of support for her general contention that MetLife acted arbitrarily

and capriciously.

### F.  Failure to demonstrate improvement  in condition.

Ms. Williams notes that the Plan paid disability benefits to her for about three and

a half years, and then terminated her benefits.  She argues that it is arbitrary and

capricious for the Plan to conclude that she is entitled to disability benefits for a period

of time, and then to conclude that she no longer is disabled unless the Plan can

demonstrate an improvement in her condition.  This argument adopts the assumption

that the Plan's initial disability determination necessarily was correct and that

determination must be challenged with new evidence before it may be changed.  On its

terms, the Plan does not operate in this way.  The Plan provides that MetLife has the

right periodically to reexamine Ms. Williams' medical records to reassess whether she

remained disabled. *Rec.*, p. 1196.  Further, even if a change in Ms. Williams' condition

was required for MetLife to terminate her benefits, I note that the reports of each of the

three reviewing physicians indicated a change in Ms. Williams' condition because each

of those reports indicate that Ms. Williams is able to work with some restrictions.  That is

a change from the previous determination that Ms. Williams was disabled.  This factor

does not weigh in favor of a finding that MetLife abused its discretion.

### G.  Conclusion

Having reviewed the plaintiff's contentions in light of the ***Glenn*** factors, I

conclude that only one of the factors weighs in favor of a finding that the Plan acted

arbitrarily and capriciously in terminating the plaintiff's disability benefits.  That factor is

MetLife's emphasis of doctors' reports favoring a termination of benefits.  However, considering all of the factors and the record as a whole, I conclude that this single factor does not, on its own, demonstrate that MetLife acted arbitrarily and capriciously. Rather, considering the record as a whole, I conclude that the Plan's decision to terminate Ms. Williams' benefits is grounded on a reasonable basis. ***Kimber v. Thiokol Corp.***, 196 F.3d 1092, 1098 (10th Cir. 1999).  The record contains conflicting medical opinions about Ms. Williams' ability to work under certain restrictions and the Plan's reliance on the medical opinions indicating that Ms. Williams has some ability to work falls "somewhere on a continuum of reasonableness - even if on the low end." *Id*.  The evaluations of MetLife's medical consultants generally are well-founded and are not inherently flawed or unreliable.  The record in this case demonstrates that MetLife's evaluation of Ms.  Williams' claim for disability benefits was a reasoned and principled process.  It was not arbitrary and capricious for MetLife to rely on the opinions of its medical consultants as a basis to terminate her benefits.  I deny the plaintiff's motion for summary judgment.

## V. AT&T DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, the AT&T defendants, the Plan and the AT&T Integrated Disability Service Center, analyze the administrative record and the applicable law, arguing that there is no basis to conclude that MetLife's decision to terminate Ms. Williams' disability benefits was arbitrary and capricious.  In essence, their motion is an analysis of the evidence discussed above from a slightly different perspective.

Based on my analysis of the evidence cited by Ms. Williams in her motion for summary judgment, and my conclusion that Ms. Williams has not shown that MetLife's

determination, on behalf of the Plan, was arbitrary and capricious, I conclude that the

AT&T defendants are entitled to summary judgment.  Absent a showing that the

termination of Ms. Williams' benefits was arbitrary and capricious, the decision of the

Plan must be upheld.  The administrative record does not support Ms. Williams'

contention that the termination of benefits was arbitrary and capricious.

The AT&T defendants seek summary judgment also on Ms. Williams' second

claim for relief.  This is Ms. Williams' claim for breach of fiduciary duty under 29 U.S.C.

§ 1132(a)(3).   In essence, she claims that the termination of her disability benefits

constitutes a breach of fiduciary duty under ERISA.  The AT&T defendants argue that

because Ms. Williams has a right to assert a claim for restoration of her benefits under

29 U.S.C. § 1132, a claim she asserts in her first claim for relief, she may not assert a

duplicative breach of fiduciary duty claim in her second claim for relief.

On this issue, I agree with the analysis of Senior United States District Judge

Lewis T. Babcock.

> The Supreme Court in **Varity Corp. v. Howe**, 516 U.S. 489, 116 S.Ct.
> 1065, 134 L.Ed.2d 130 (1996), addressed the relief authorized by 29
> U.S.C. § 1132(a)(3): "the statute authorizes 'appropriate' equitable relief.
> We should expect that courts, in fashioning 'appropriate' equitable relief,
> will keep in mind the 'special nature and purpose of employee benefit
> plans,' and will respect the 'policy choices reflected in the inclusion of
> certain remedies and the exclusion of others.' " **Id**. at 515, 116 S.Ct. 1065
> (citing **Pilot Life Ins. Co.**, 481 U.S. at 54, 107 S.Ct. 1549). The Court
> concluded that relief authorized by this section is limited.
>
>> Thus, we should expect that where Congress elsewhere
>> provided adequate relief for a beneficiary's injury, there will
>> likely be no need for further equitable relief, in which case
>> such relief normally would not be "appropriate."
>
> **Id**.

**Klover v. Antero Healthplans**, 64 F.Supp.2d 1003, 1012 (D.Colo.,1999).  Ms. Williams

second claim for relief, her claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), is duplicative of her first claim for relief.  The AT&T defendants are entitled to summary judgment on this claim.

The AT&T defendants' motion for summary judgment must be granted on Ms. Williams' first and second claims for relief.

### VI.  METLIFE'S MOTION FOR SUMMARY JUDGMENT & MOTION FOR ASSESSMENT OF PENALTIES

In its motion for summary judgment, MetLife joins the arguments of the AT&T defendants as to the plaintiff's first and second claims for relief.  As discussed above, AT&T is entitled to summary judgment on Ms. Williams' first and second claims for relief.  To the extent Ms. Williams' first and second claims are asserted against MetLife, MetLife is entitled to summary judgment on the same basis.

MetLife's motion for summary judgment addresses also Ms. William's third claim for relief.  In this claim, Ms. Williams alleges that MetLife, as the claims administrator of the Plan, failed to comply with its statutory obligation timely to provide Ms. Williams with documents she requested from the Plan.  Ms. Williams addresses this claim in her motion for assessment of penalties [#77] and in her reply in support of that motion [#92].

Ms. Williams says she requested from MetLife, in writing via facsimile and certified U.S. mail, a complete copy of her claim file, the summary plan description, the policy, and other plan documents, including statements of policies, guidelines, protocols or pertinent sections of MetLife's claims manual, as well as information regarding MetLife's physician consultant review.  *Motion for assessment of penalties* [#77], p. 2; *Rec.*, pp. 171 - 173 (letter requesting documents).  This request was made on February 26, 2007.  Ms. Williams says the claim file was sent on August 7, 2007, but the other

documents requested were not provided.

Title 29 U.S.C. § 1132(c)(1) provides:

Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Ms. Williams contends that MetLife should be penalized under § 1132(c)(1) for its failure to provide certain requested documents to Ms. Williams.

With regard to the delay in providing the claim file to Ms. Williams, I conclude that the administrative record shows that the delay in providing the claim file was caused by bureaucratic confusion as opposed to neglect of Ms. Williams' request.  I base this conclusion on MetLife's notes concerning Ms. Williams' request for a copy of the claim file.  *Rec.*, pp. 167 - 168, 171 - 173, 177.  With regard to the delay in providing the claim file, I exercise my discretion under § 1132(c)(1) and I decline to impose a penalty on MetLife for the delay in providing the claim file to Ms. Williams.

Ms. Williams' other requests were for Plan documents.  I note that the Plan documents provide that AT&T Corp. is designated as the Plan Administrator, and that requests for Plan documents should be directed to the Plan Administrator.  *Rec.*, pp. 1203 - 1204.  MetLife, on the other hand, is designated as a Claims Administrator. *Rec.*, p. 1203. To the extent Ms. Williams requested from MetLife copies of Plan documents, her request was directed to the wrong entity under the terms of the Plan. Under these circumstances, Ms. Williams cannot assert a claim under § 1132(c)(1) for

MetLife's failure to deliver copies of the Plan documents she requested.

Having reviewed the record, I exercise my discretion under § 1132(c)(1) and I decline to impose a penalty on MetLife for the delay in providing the claim file to Ms. Williams.  In addition, I conclude that Ms. Williams may not seek the imposition of a penalty against MetLife under § 1132(c)(1) based on MetLife's alleged failure to provide Ms. Williams with Plan documents.  Under the terms of the Plan, it was the obligation of AT&T Corp., and not of MetLife, to provide copies of Plan documents. Ms. Williams did not request Plan documents from AT&T Corp.  MetLife is entitled to summary judgment on Ms. Williams' third claim for relief.

For the reasons discussed above, I grant MetLife's motion for summary judgment on Ms. Williams' first, second, and third claims for relief, and I deny Ms. Williams' motion for assessment of penalties.

## VII.  PLAINTIFF'S MOTION IN LIMINE

In her motion in limine [#102], Ms. Williams contends that AT&T's motion for summary judgment contains "blatantly false statements" indicating that one of Ms. Williams' treating physicians is not board certified.  I have considered Ms. Williams' explanation of the status of this physician's board certification and conclude that her explanation is undisputed.  The status of this physician's board certification carries no weight in my analysis of the administrative record in this case.  Therefore, I deny the motion in limine as moot.

## VIII.  CONCLUSION & ORDERS

I have reviewed the plaintiff's claim that the defendants' termination of her disability benefits was arbitrary and capricious.  Specifically, I have reviewed the portions of the administrative record [#59 (sealed version)] & [#60 (public entry for

[#59])] cited by the parties, as well as the factors and considerations that I must consider under the applicable law.  I conclude that the plaintiff has not demonstrated that the defendants' termination of her disability benefits was arbitrary and capricious.  I conclude, therefore, that the plaintiff's motion for summary judgment must be denied and that the AT&T defendants' motion for summary judgment must be granted.

In addition, I have considered MetLife's motion for summary judgment, which adopts the AT&T defendants' motion for summary judgment to the extent the plaintiff's first and second claims, her claims for benefits under the Plan, are asserted against MetLife.  MetLife's motion for summary judgment on the plaintiff's first and second claims must be granted for the same reasons that the AT&T defendants' motion for summary judgment on these claims must be granted.

MetLife's motion for summary judgment addresses also the plaintiff's third claim for relief, which concerns MetLife's alleged failure to provide the plaintiff with documents, as required by 29 U.S.C. § 1132(c)(1).  The plaintiff's motion for assessment of penalties [#77] seeks, in essence, summary judgment for the plaintiff on this claim.  I conclude that MetLife is entitled to summary judgment on the plaintiff's third claim for relief and, for the same reasons, that the plaintiff's motion for assessment of penalties must be denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Order Granting Defendants' Motion for Summary Judgment, and Denying Plaintiff's Motion for Summary Judgment, & Resolving Related Motions** [#111] filed September 30, 2010, is **WITHDRAWN**;

2.  That this **Amended Order Granting Defendants' Motion for Summary**

**Judgment, and Denying Plaintiff's Motion for Summary Judgment, & Resolving Related Motions** shall be **SUBSTITUTED** for the original order [#111];

3.  That the **AT&T Defendants' Motion for Summary Judgment on First and Second Claims** [#66  (sealed version)],  [#67 (redacted version)], & [#68 (public entry for [#66])] filed November 30, 2009, is **GRANTED**;

4.  That the **Plaintiff's Combined Cross-Motion and Brief in Support for Summary Judgment To Reverse Defendants' Decision To Terminate her Long-Term Disability Benefits** [#72 (sealed version)], [#73 (redacted version)], & [#75 (public entry for [#72])] filed December 11, 2009, is **DENIED**;

5.  That the **Plaintiff's Motion for Assessment of Penalties Against Defendant Metlife under 29 U.S.C. § 1132(c)** [#77] filed December 21, 2009, is **DENIED**;

6.  That  **MetLife's Combined Motion and Brief for Summary Judgment** [#83] filed January 8, 2010, is **GRANTED**;

7.  That the **Plaintiff's Motion in Limine to Exclude Defamatory and Irrelevant Reference to Board Certification of Plaintiff's Treating Physician** [#102] filed February 8, 2010, is **DENIED** as moot;

8.  That the **JUDGMENT** [#112] entered in this case on September 30, 2010, **SHALL REMAIN** in full force and effect without amendment; and

9.  That the defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 11, 2011, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge